UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STOR-ALL GENTILLY WOODS, LLC                      CIVIL ACTION

VERSUS                                                      No. 23-334

INDIAN HARBOR INSURANCE CO., ET AL.            SECTION I

ORDER & REASONS

Before the Court is a motion[1] by defendants Certain Underwriters at Lloyd's, London, General Security Indemnity Company of Arizona, HDI Global Specialty SE, Indian Harbor Insurance Company, Lexington Insurance Company, Old Republic Union Insurance Company, QBE Specialty Insurance Company, Safety Specialty Insurance Company, Steadfast Insurance Company, United Specialty Insurance Company (collectively, "the insurers") to compel arbitration and stay the above-captioned proceedings. Plaintiff Stor-All Gentilly Woods, LLC ("Stor-All") opposes the motion.[2] For the reasons below, the Court grants the motion.

## I.    BACKGROUND

This suit arises from a property insurance claim. Stor-All's properties were damaged by Hurricane Ida in August 2021.[3] At that time, the insurers insured the properties pursuant to a surplus commercial property insurance policy.[4] The policy contains an arbitration clause, which provides:

---

[1] R. Doc. No. 6.
[2] R. Doc. No. 11.
[3] R. Doc. No. 1-1.
[4] R. Doc. No. 1-2.

1

<u>SECTION VII – CONDITIONS</u>

C. ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

\*\*\*\*\*

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.[5]

After a dispute arose as to the amount of damages sustained by Stor-All's property, Stor-All filed a lawsuit in state court, asserting claims against all of the insurers for breach of contract and bad faith.[6] The insurers removed the matter to federal court, and now seek an order enforcing the arbitration agreement contained in the insurance contract.

## II.   STANDARD OF LAW

When confronted with a motion to compel arbitration, the court must first determine whether there is a valid agreement to arbitrate. State principles of contract law apply to the determination of whether the parties entered an arbitration agreement. *Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 20-102, 2021 WL 359735, at \*9 (W.D. La. Feb. 2, 2021) (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 200–01 (5th Cir. 2016)) "[W]hile the strong federal policy favoring arbitration applies to the scope of an arbitration agreement, [it] does not apply to the initial determination [of] whether there is a valid agreement

---

[5] *Id.* at 39.
[6] R. Doc. No. 1-1.

to arbitrate." *Auto Parts Mfg. Miss., Inc. v. King Const. of Houston, LLC*, 782 F.3d 186, 196 (5th Cir. 2015).

Though arbitration agreements in domestic insurance policies are generally not enforceable in Louisiana, *see* La. Stat. Ann. § 22:868, the Fifth Circuit has held that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") supersedes that state law. *Safety Nat'l Cas. Corp. v. Certain Underwriters At Lloyd's, London*, 587 F.3d 714, 732 (5th Cir. 2009); *accord Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 683 (E.D. La. 2012) (Milazzo, J.) ("[T]he Convention supersedes La. Rev. Stat. § 22:868."); *see also* 9 U.S.C. § 201, *et seq.* (implementing the Convention).

Where the Convention applies, "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; '(3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'" *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)). If these requirements are met, the Convention requires an order of arbitration, unless the court finds that the "agreement is null and void, inoperative or incapable of being performed." *Id.* (citation omitted).

## III.   DISCUSSION

The insurers assert that the instant dispute must be arbitrated because the insurance policy contains a valid agreement to arbitrate, and it falls under the

3

Convention. In opposition, Stor-All argues that the arbitration clause is adhesionary and therefore invalid, and that the Convention does not apply "[b]ecause this dispute involves domestic matters and numerous, separate contracts that are not between international parties."[7]

### a. Whether the Arbitration Agreement is Valid

Stor-All argues that the arbitration agreement is an invalid contract of adhesion because (1) it is allegedly found within an endorsement rather than the body of the insurance contract; (2) the language was not received by Stor-All prior to entering into the agreement and thus Stor-All had no opportunity to negotiate the terms; and (3) the circumstances indicate unequal bargaining power among the parties.[8]

Under Louisiana law, "a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party," which may "raise a question as to whether or not the weaker party actually consented to the terms." *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1, 8–9 (La. 2005) (quotation and citation omitted). The party challenging the contract has the burden of proving its lack of consent. *Id.* at 10. The court focuses on the following factors: "(1) the physical characteristics of the arbitration clause, including font size; (2) the distinguished features of the arbitration clause; (3) the mutuality of the arbitration clause, in terms of the relative burdens and advantages

---

[7] R. Doc. No. 11, at 11.
[8] *Id.* at 3–4.

conferred by the clause upon each party; and (4) the relative bargaining strength of the parties." *Georgetown Home Owners Ass'n*, 2021 WL 359735 at *12 (citing *Aguillard*, 908 So.2d at 16–17).

Applying these standards to the policy between the parties, the Court concludes that the arbitration agreement is not adhesionary. The agreement is written in standard-size text within a 42-page policy document and clearly identified in capital letters as an "Arbitration Clause."[9] The clause applies equally to both parties and does not require Stor-All to arbitrate any claim that an insurer is allowed to litigate. Additionally, courts evaluating similar arbitration agreements have pointed out that the agreement allows the plaintiff to select its own arbitrator.[10] *Glad Tidings Assembly of God Church of Lake Charles v. Indian Harbor Ins. Co.*, No. 21-1009, 2021 WL 2676963, at *2 (W.D. La. June 29, 2021) (citing *Georgetown Home Owners Ass'n*, 2021 WL 359735, at *16).

Finally, there is no basis to presume that Stor-All had no bargaining power in obtaining the policy or that it could not read or understand its terms before agreeing to them. "In Louisiana, a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Georgetown Home Owners Ass'n*, 2021 WL 359735, at *13. Accordingly, the

---

[9] R. Doc. No. 6-2, at 39. Stor-All's contention that the arbitration clause "is not found in the body of the insurance contract" is simply incorrect. R. Doc. No. 11, at 3.
[10] R. Doc. No. 6-2, at 39 (providing that each party may appoint their own arbitrator).

arbitration agreement is not a contract of adhesion and not unenforceable on that account.

Stor-All additionally argues that the arbitration agreement is made ambiguous by endorsement provisions to the insurance contract, and that the ambiguity must be construed in its favor.[11] The endorsement provisions referenced by Stor-All are "service of suit" clauses.[12] The endorsement from the Underwriters at Lloyd's, London ("Underwriters"), for example, provides that "in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon . . . will submit to the jurisdiction of a Court of competent jurisdiction within the United States."[13] Stor-All argues that the service of suit clauses changed the terms of the policy by negating the arbitration clause and making it subject to Louisiana law in all respects.

The Fifth Circuit rejected a similar argument in *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991). In that case, the court held that a service of suit clause similar to that at issue here "could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award." *Id.* at 1205. Since *McDermott*, courts have consistently held that endorsements and service of suit clauses like those in Stor-All's

---

[11] R. Doc. No. 11, at 13.

[12] R. Doc. No. 6-2, at 79, 97, 104.

[13] *Id.* at 79. The service of suit clauses from the other insurers employ substantially similar language. *See, e.g.*, *id.* at 97 ("In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the 'Insured,' will submit to the jurisdiction of a court of competent jurisdiction within the United States.").

policy do not nullify otherwise valid arbitration agreements. *E.g.*, *Tra-Dor Inc. v. Underwriters at Lloyds London*, No. 21-02997, 2022 WL 3148980, at *4 (W.D. La. July 25, 2022) (applying Louisiana principles of contract formation, and finding no conflict between a service of suit clause and an arbitration clause); *Woodward Design + Build, LLC v. Certain Underwriters at Lloyd's London*, No. 19-14017, 2020 WL 5793715, at *3 (E.D. La. Sept. 29, 2020) (Guidry, J.) (finding that defendants did not waive their right to arbitration by issuing endorsement and service of suit provisions nearly identical to those at issue here); *Sw. LTC-Mgmt. Servs. LLC v. Lexington Ins. Co.*, No. 18-491, 2019 WL 1715832, at *5 (E.D. Tex. Mar. 29, 2019) (analyzing similar applicable law endorsement and service of suit clause, determining that they did not negate an arbitration agreement, and collecting cases holding the same). Following these cases, the Court determines that the endorsement and service of suit clauses in Stor-All's insurance contract with defendants did not negate the arbitration agreement. Instead, the Court "construes the service-of-suit provision as complementing the arbitration clause by providing a judicial forum for compelling or enforcing arbitration." *Sw. LTC-Mgmt. Servs.*, 2019 WL 1715832, at *6.

Finally, Stor-All argues that, because La. Stat. Ann. § 22:868 generally prohibits arbitration agreements in domestic insurance policies, the arbitration agreement is unenforceable.[14] Stor-All is incorrect. As stated, the Fifth Circuit has held that the Convention supersedes that state law. *Safety Nat'l Cas. Corp.*, 587 F.3d at 732.

---

[14] R. Doc. No. 11, at 3.

### b. *Whether the Convention Applies*

The insurers assert that the arbitration agreement falls under the Convention as implemented by 9 U.S.C. § 201 *et seq.* As stated, when applying the Convention, "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; '(3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'" *Freudensprung,* 379 F.3d at 339.

The insurers assert all requirements are met in this case, because (1) the insurance contract contains a written agreement to arbitrate "all matters in difference between the Insured and the Companies"; (2) the agreement provides for arbitration in a signatory nation, namely the United States, and specifically in New York; (3) the insurance policy arises out of a commercial legal relationship; and (4) multiple parties to the agreement are not citizens of the United States, as Certain Underwriters consists primarily of syndicates which are citizens of the United Kingdom, and HDI Global Specialty SE is a citizen of Germany.[15]

It is not disputed that the first three factors are satisfied. However, Stor-All takes issue with factor four, arguing that the Convention does not apply because "this dispute involves domestic matters and numerous, separate contracts that are not between international parties."[16]

---

[15] R. Doc. No. 15, at 9.
[16] R. Doc. No. 11, at 11.

The policy states explicitly that "[t]his contract shall be construed as a separate contract between the Insured and each of the Underwriters."[17] In *Port Cargo Service, LLC v. Certain Underwriters at Lloyd's London*, No. 18-6192, 2018 WL 4042874, at *3 (E.D. La. Aug. 24, 2018) (Lemmon, J.), the court, considering this same policy language, held that the insured had separate insurance contracts with each of the insurers. Applying these principles to a similar policy, the court in *City of Kenner v. Certain Underwriters at Lloyd's, London*, No. 21-2064, 2022 WL 307295, at *2 (E.D. La. Feb. 2, 2022) (Barbier, J.) ("*City of Kenner I*"), held that the arbitration clause in the overarching policy document should be read as between the insured and each insurer separately. In accordance with these decisions, this Court finds that Stor-All has a separate contract with each of the defendants.

As stated, the Convention applies only where at least one party to an agreement is a non-U.S. citizen. It is therefore clear that the foreign insurers (Certain Underwriters and HDI) can enforce the arbitration clause under the Convention. But the question of whether the domestic insurers can enforce the arbitration clause remains. Stor-All urges the Court not to allow the domestic insurers to "ride the coattails" of Certain Underwriters and HDI.[18] Defendants argue that Stor-All is

---

[17] R. Doc. No. 6-2, at 6.

[18] R. Doc. No. 11, at 10-11. Stor-All also argues that, if the Convention does not apply to the domestic defendants, then Louisiana state law would "reverse preempt" the FAA and preclude the domestic insurers' enforcement of the arbitration clause. The Court does not address this argument because it finds that the domestic insurers may enforce the arbitration clause pursuant to equitable estoppel.

equitably estopped from objecting to arbitration with the domestic insurers because Stor-All's claims against all the insurers are identical.[19]

The Fifth Circuit has held that "equitable estoppel is warranted when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both nonsignator[ies] and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quotation and emphasis omitted). "Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.* (quotation and emphasis omitted). Indeed, the Supreme Court has endorsed the application of domestic equitable estoppel doctrines to the Convention. *Par. of St. Charles v. HDI Glob. Specialty SE*, No. 22-3404, 2023 WL 1419937, at *4 (E.D. La. Jan. 31, 2023) (Ashe, J.) (citing *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020) ("[N]othing in the text of the Convention could be read to otherwise prohibit the application of domestic equitable estoppel doctrines" that permit the enforcement of arbitration agreements by nonsignatories).

The Court agrees with defendants that equitable estoppel precludes Stor-All from objecting to arbitration with the domestic insurers because its claims against all defendants, foreign and domestic, are inextricably intertwined. *Grigson*, 210 F.3d

---

[19] R. Doc. No. 15, at 16.

at 527–28. Stor-All filed a single complaint against all the defendants.[20] With one exception,[21] the complaint refers to "defendants" as a collective entity. For example, the complaint alleges that "[d]efendants failed to properly adjust the claim," "[d]efendants' adjustment(s) of the claim was in bad faith," "[d]efendant's [sic] each failed to respond, substantively or otherwise, to the documentation and satisfactory proof of loss."[22] In short, Stor-All does not distinguish between the defendants in its allegations of wrongful conduct, and instead attributes the alleged wrongful conduct to all of them.

By failing to differentiate between the wrongs of each defendant, Stor-All has alleged claims for substantially interdependent and concerted misconduct and, thus, is equitably estopped from objecting to arbitration of its claims against the domestic insurers. *See Par. of St. Charles*, 2023 WL 1419937, at *4; *see also City of Kenner v. Certain Underwriters at Lloyd's London,* No. 22-2167, 2022 WL 16961130, at *3 (E.D. La. Nov. 16, 2022) (Vance, J.) (applying *Grigson* and *Holts v. TNT Cable Contractors, Inc.*, No. 19-13546, 2020 WL 1046337, at *4 (E.D. La. Mar. 4, 2020) (Feldman, J.), to hold that equitable estoppel compels the arbitration of claims made "without differentiation among the insurer defendants" alleged to "have acted interdependently and in concert in the adjustment and evaluation of plaintiff's insurance claims"). Accordingly, the motion to compel arbitration will be granted.

---

[20] R. Doc. No. 1-1.
[21] Stor-All asserts that the defendants received satisfactory proof of loss when adjusters retained by the Underwriters and Independent Specialty (not a named defendant) inspected the properties.
[22] *Id.* at 7.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the insurer's motion is **GRANTED** and that all claims asserted in this matter be referred to arbitration pursuant to the policy.

**IT IS FURTHER ORDERED** that this matter is hereby **STAYED** pending completion of the arbitration process. The action may be reopened, on motion of any party, after the completion of the arbitration proceedings.

New Orleans, Louisiana, March 21, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**